IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JOSHUA JOE MOLINAR,               §
                                  §
            Plaintiff,             §
                                  §
v.                                §    CIVIL ACTION NO. 5:20-CV-283-BQ
                                  §
UNITED STATES,                    §
                                  §
            Defendant.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis* (IFP), Joshua Joe Molinar filed this action under

42 U.S.C. § 1983[1] alleging violations of his constitutional rights in connection with criminal

charges originating out of Lubbock County, Texas, for which he has since been released.  Compl.

1–2, ECF No. 1; First Am. Compl. 3–4, ECF No. 5; Second Am. Compl. 4, 6–11, ECF No. 20.[2]

He seeks monetary damages and a declaration that the events described in his Complaint violated

his constitutional rights.  Second Am. Compl. 4, 13.

Molinar filed his original and First Amended Complaints while detained at Lubbock

County Detention Center (LCDC) on charges unrelated to those described in his pleadings.  ECF

Nos. 1, 5.  On March 17, 2021, while still detained at LCDC, Molinar filed a motion for leave to

file a Second Amended Complaint,[3] in which he removed several defendants named in his First

---

[1] Molinar's Second Amended Complaint, the operative pleading in this case, does not cite § 1983 but instead seeks relief under the Federal Tort Claims Act (FTCA).  Second Am. Compl. 4.  However, liberally construing Molinar's pleadings, he seeks recovery for violations of his constitutional rights arising from his confinement in a state jail, thus implicating § 1983.  *Id.*  Moreover, the United States District Judge, in his order transferring this case to the undersigned, described Molinar's original filing as a "civil-rights complaint." ECF No. 21, at 1. The undersigned similarly construes it as such.

[2] Citations to Molinar's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[3] Molinar's First and Second Amended Complaints (ECF Nos. 5, 20) are simply designated "Amended Complaint" on the Court's docket.  The undersigned refers to them as "First" or "Second" Amended Complaint to avoid confusion.

Amended Complaint.  ECF No. 17.  After filing his motion for leave, but before the district judge granted Molinar's motion and docketed his Second Amended Complaint, Molinar filed a notice of change of address to a private residence, indicating he had been released from LCDC.  ECF Nos. 18, 19, 20.  The district judge then transferred this case to the undersigned United States Magistrate Judge for further proceedings.  ECF No. 21.  The undersigned reviewed Molinar's Second Amended Complaint, as well as authenticated records provided by Lubbock County, and ordered Molinar to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he timely completed and returned.  ECF Nos. 24, 25.

Molinar has not consented to proceed before the undersigned magistrate judge.  After considering the allegations in Molinar's pleadings, his questionnaire responses, and applicable law, the Court concludes that Molinar's claims in this action must be dismissed for failure to state a claim in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## I.    Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2) (2019); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).  A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories.  *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam).  When

analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records.  *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam).  And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level.  *Id*. (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A.  Molinar's Claims and the Authenticated Records

Molinar alleges seven claims against six Defendants:  the United States; the Lubbock County District Attorney (Lubbock DA);[4] criminal defense attorney Mark Snodgrass; the grand jury; Molinar's daughter; and Molinar's mother (collectively, Defendants).  Second Am. Compl. 1, 3; Questionnaire 4–8.

---

[4] In his Second Amended Complaint, Molinar named only the United States as Defendant.  Second Am. Compl. 1, 3. Molinar added the remaining five Defendants in his questionnaire responses.  Questionnaire 4–8, ECF No. 25.  While Molinar names some variation of "District Attorney, Lubbock Prosecutor" as a Defendant in each claim, the Court understands Molinar as challenging the actions of the individual(s) within the Lubbock County District Attorney's Office who prosecuted his case (*id.*; *see, e.g.*, Second Am. Compl. 10 (referring to the Lubbock DA as "they")) and therefore analyzes his claims in this context.

According to his Second Amended Complaint, Defendants violated Molinar's constitutional rights when they participated in his indictment and prosecution based on his daughter's sexual assault accusation, and for which he was detained in LCDC for twenty-one months[5] following his indictment. Second Am. Compl. 4, 8; *see also* Questionnaire 2.

Molinar alleges that Texas Family Protective Services—which he refers to interchangeably as Child Protective Services (CPS)—notified him in November 2016, while he was incarcerated in a "Dallas state jail," that his daughter had accused him of sexually assaulting her earlier that year. Second Am. Compl. 6. Molinar maintains that his daughter's allegations are false and that his mother, who has custody of his daughter, knew of their falsity. *See id.* at 10 (contending his "mom knew [he] wouldn't [have] done such a thing" and "when it was first brought to her attention [his mother] didn't file charges plus she knows how much of a lier [sic] and how bad [his] daughter is"). Molinar further states that CPS closed its investigation into his daughter's accusation in December 2016, which he seems to offer in support of his claim the assertion was false, but he fails to plead CPS's findings.[6] *See, e.g.*, Questionnaire 3.

Molinar spent most of 2017 incarcerated on unrelated charges. Second Am. Compl. 6–8; Questionnaire 2. Upon Molinar's release from his 2017 incarceration he was "arraigned for Lubbock County aggravated sexual assult [sic] of a child" based on a grand jury indictment, and

---

[5] Molinar confirms he was detained in LCDC from December 2017 until July 2019. Questionnaire 2. He explains that Lubbock County did not arrest him until after his release in December 2017 on a prior charge in Tarrant County, after which he was arraigned in Lubbock on December 22 or 23. *Id.*; *see* Second Am. Compl. 8. Under this timeline, LCDC detained Molinar for nineteen months, not twenty-one. While the authenticated records contain conflicting dates regarding Molinar's custody, they generally show the following: (1) Tarrant County arrested Molinar on September 27, 2017, for his Lubbock sexual assault charge; and (2) Lubbock County Sheriff's Office confirmed Molinar's warrant on October 4, 2017, and took custody of him upon his arraignment—December 22, 2017. Without a clearer timeline available, the Court accepts as true Molinar's allegation that he was detained for twenty-one months on his sexual assault charge, though possibly not exclusively in LCDC.

[6] Despite Molinar's implication that CPS's decision to close its investigation is proof of his innocence, authenticated records reflect that CPS reported its overall disposition as "Reason to Believe"—which "means that a preponderance of the evidence supports that the alleged abuse or neglect did occur"—and its final risk level as "Moderate," but noted it was closing the investigation because Molinar was currently incarcerated and therefore his daughter was "safe."

thereafter detained in LCDC.  Second Am. Compl. 8; Questionnaire 2 (explaining he was arraigned in Lubbock County on either December 22 or 23, 2017).  Defense attorney Mark Snodgrass represented Molinar for the duration of his Lubbock County prosecution.  Second Am. Compl. 8–10.

Once in LCDC, Molinar alleges that he was assigned three separate trial dates, none of which occurred.  *Id.* at 9–10.  His first trial date, October 1, 2018, was "canceled," after which "months" went by without a new date.  *Id.* at 9.  According to Molinar, Snodgrass asked if Molinar "wanted [Snodgrass] to file a speedy trial [motion on] January 1st, 2019," to which Molinar replied "yes of course."  *Id.*  But Molinar did not go to trial in January.  *Id.*  Snodgrass then informed Molinar that he had spoken with the Lubbock DA, and Molinar was "for sure going to trial March 4th 2019."  *Id.* at 10.  When "March passed" without a trial date, Molinar "started writing the state bar because [his] rights to a speedy trial were being violated."  *Id.*

According to Molinar, Snodgrass filed a speedy-trial motion on April 17, 2019, "after [Molinar] followed all the steps to the state bar," implying that Snodgrass only filed the motion because of Molinar's bar complaint.  *Id.*  Molinar received a new trial date of July 22, 2019, which he characterizes as "way over 90 days" from the date of Snodgrass's motion.  *Id.*  Molinar's case did not reach this latest trial date, however, because "the [DA] dropped all charges" on July 8, 2019.  *Id.*

Molinar's § 1983 claims stem from his belief that the Defendants violated his Fourth, Sixth, and Fourteenth Amendment rights.  *Id.* at 4, 11; Questionnaire 3–8.  Molinar additionally pleads several tort claims.  In his first claim, Molinar contends that the Lubbock DA failed to, or did not adequately, investigate his daughter's sexual assault allegations.  Questionnaire 2–3.  As a result, Molinar asserts in his second claim that the United States, the Lubbock DA, Snodgrass, Molinar's

mother, and Molinar's daughter "presented false allegations to a grand jury," which subsequently led to his indictment. *Id.* at 3–4. As factual support, Molinar states there was "no investigation," and "not once did [he] talk to a detective." *Id.* at 3. Further, Molinar claims "there is no way it took 21 months to figure this situation out" when there was "no evidence [sic]" of his guilt and "CPS already closed [its] investigation in" December 2016.[7] *Id.* Molinar alleges the foregoing violated his Fourteenth Amendment due process rights and Sixth Amendment right to a speedy trial. *Id.* at 4.

For his third claim, Molinar alleges that the United States, the Lubbock DA, and Snodgrass violated the Fourth Amendment by falsely imprisoning him when he was "held against [his] will on false accusations." *Id.* at 5; Second Am. Compl. 11. Molinar relatedly contends in his fourth claim that the United States and the Lubbock DA engaged in malicious prosecution when the "Defendant[s] acted with malice in commencing or continuing the criminal proceeding" in which he ultimately received "a favorable termination in general." Questionnaire 5.

In his fifth claim, Molinar vaguely and conclusorily states the United States, the Lubbock DA, and the grand jury "made an illegal, improper, or perverted use of the process—a use neither warranted nor authorized by process." *Id.* at 7 (cleaned up). Molinar provides no facts to support this claim, but he does allege in his questionnaire responses is that the grand jury returned an indictment charging him with aggravated sexual assault based upon his daughter's allegations. *Id.* at 8.

Molinar's sixth claim concerns a purported delay in filing a speedy-trial motion, which Molinar attributes to the United States, the Lubbock DA, and Snodgrass. *Id.* at 7. Molinar alleges

---

[7] While Molinar alleges there was "no investigation" and "not once did [he] talk to a detective," the authenticated records show that he at least spoke with a CPS case worker on December 16, 2016, concerning the allegations. Further, as a result of the CPS report, Lubbock police interviewed his twelve-year-old daughter and submitted her to a physical exam prior to Molinar's arrest.

Defendants violated his constitutional rights because "[his] lawyer asked [him] in December of 2018 and it was agreed to file [a speedy-trial motion] the beginning of January," but Snodgrass did not actually file the motion until Molinar purportedly contacted the state bar. *Id.* Molinar also includes in this claim his allegation that the Lubbock DA filed pretrial motions "to use [his] image as a[n] [e]nhancement to prosecute [him] on judgement [sic] at trial," in violation of his Fourth and Sixth Amendment rights, although he admits the trial never occurred. *Id.*; *see* Second Am. Compl. 10.

For his seventh claim, Molinar contends that the foregoing events, allegedly perpetrated by the United States, the Lubbock DA, Snodgrass, and Molinar's mother and daughter, intentionally inflicted upon him emotional distress. Questionnaire 6.

As a basis for suing the United States, Molinar argues that his criminal prosecution for aggravated sexual assault of a child implicates the FTCA. *Id.* at 8; Second Am. Compl. 4 (citing 28 U.S.C. §§ 2671, 2680(h)), 11. Molinar concedes that the Lubbock DA and "attorney's" are "immune[] from civil [suit]," but in turn argues that because of their immunity the FTCA applies to his case. Questionnaire 8. Molinar further claims that "these officials are government employees[,] . . . the FTCA applies to government employees that work within there [sic] scope of employment[,] . . . [and] the United States is responsible for there [sic] employees and [is] liable for there [sic] actions." *Id.*

Molinar avers that due to the stress of his pending trial, LCDC medical staff provided him "Prozac, Celexa, and Boostbar" for his anxiety and "to help [him] sleep," but admits he voluntarily stopped taking the medications. Second Am. Compl. 8–9. He also avers that he gained approximately thirty pounds while detained because he "was eating to help [himself] sleep at night." *Id.* at 9. As relief, Molinar requests $2,000,000 in compensatory damages, a "declaration

that the acts and omissions described herein violate his rights under the Constitution and the laws of the United States," and "[a]ny other relief the Court deems just, proper, and equitable." *Id.* at 4, 13. Although Molinar conclusorily requests "that this Court grant[] the declaratory and injunctive relief which Plaintiff seeks," he does not actually specify the injunctive relief sought in his list of demands. *Id.* at 12–13; *cf.* First Am. Compl. 8 (requesting "a preliminary and permanent injunction" against defendants that Molinar subsequently omitted from his Second Amended Complaint); ECF No. 17 (moving for leave to file a Second Amended Complaint adding the United States as a defendant and removing the defendants against whom Molinar sought injunctive relief in his First Amended Complaint).

### B. The Federal Tort Claims Act does not apply to Molinar's § 1983 action.

Molinar alleges the FTCA applies to the claims in his Second Amended Complaint because "these officials are government employees and the United States is liable for [their] misconduct"— without clarifying who "these officials" are—and because under the FTCA, the United States has consented to be sued. Questionnaire 8; Second Am. Compl. 4, 11. Specifically, Molinar contends the FTCA provides a remedy for his allegations of "false imprisonment, intentional infliction of emotional distress, lack of investigation, abuse of process, and malicious prosecution." Second Am. Compl. 11 (cleaned up). Molinar is correct that "[t]he FTCA acts as a limited waiver of sovereign immunity allowing the United States to be sued for injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Huff v. Neal*, 555 F. App'x 289, 296–97 (5th Cir. 2014) (per curiam) (internal quotation marks omitted). He is incorrect, however, in his assertion that the FTCA applies to the claims he seeks to pursue herein as a state detainee.

The FTCA permits individuals, including prisoners, to sue the United States for actions by the federal government that result in injury or death. *United States v. Muniz*, 374 U.S. 150, 150 (1963); *Huff*, 555 F. App'x at 296–97. Molinar contends, however, that he spent all twenty-one months of his allegedly wrongful detention in LCDC, a county jail, and attributes all government action to the Lubbock DA, a state agent. Questionnaire 2; Second Am. Compl. 11; *see Quinn v. Roach*, 326 F. App'x 280, 292–93 (5th Cir. 2009) ("This circuit has stated on numerous occasions that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities."). Molinar "is [therefore] neither a federal prisoner confined in a federal facility nor [is the named defendant a] proper defendant[] to be sued under the [FTCA]." *Edwards v. Lastrapes*, No. 6:19CV012, 2020 WL 2212522, at *4 (E.D. Tex. Mar. 2, 2020) ("Plaintiff, a state prisoner, may not bring a claim under the [FTCA]."), *R. & R. adopted by* 2020 WL 2200271 (E.D. Tex. May 6, 2020). For these reasons, the district judge should dismiss as frivolous Molinar's claim for relief under the FTCA.

**C. Molinar cannot obtain declaratory or injunctive relief.**

Molinar seeks from the Court "a declaration that the acts and omissions described [in his Second Amended Complaint] violate his rights under the Constitution" and federal law. Second Am. Compl. 13. Molinar also states that because he "has no plain adequate or complete remedy at law" and "has been and will continue to be irreparabl[y] injured by the conduct of the government employees," he asks "that this Court grant[] the declaratory and injunctive relief which Plaintiff seeks." *Id.* at 12. Molinar, however, does not request any specific injunctive relief from the Court, such as the type he sought in his First Amended Complaint but omitted from his Second Amended Complaint. *Id.* at 13; *cf.* First Am. Compl. 8; ECF No. 17.

A pre-trial detainee is not entitled to injunctive relief without "real and immediate" danger of "sustaining some direct injury as the result of the [defendants'] challenged conduct." *Quinn*,

326 F. App'x at 293.  Even if a county prosecutor threatens a detainee with the ability to re-urge dropped charges until the statute of limitations runs, such a threat is too vague to constitute the type of immediate danger required to obtain injunctive relief.  *Id.*  Without threat of immediate or ongoing danger, a detainee cannot satisfy the high burden necessary to receive declaratory or injunctive relief.  *Id.*

The Court first notes that Molinar's conclusory request for injunctive relief is moot. *Sutherland v. Akin*, No. 4:19-CV-216-O, 2021 WL 4197239, at *7 (N.D. Tex. Sept. 15, 2021) (finding inmate's request for declaratory and injunctive relief moot where plaintiff was no longer housed at the allegedly infringing jail).  Molinar avers that the Lubbock DA "dropped all charges" against him on July 8, 2019 (Second Am. Compl. 10) and, as a result, he was released from custody at LCDC.  *See* Questionnaire 2 (confirming he was "held in Lubbock County Jail from December 2017 until the DA dropped the aggravated sexual assault of a child charge[s] in July 2019").  Moreover, while Molinar alleges that he "will continue to be irreparabl[y] injured" by the government's actions, he fails to specify how such ongoing harm will accrue or entitle him to equitable relief.  Second Am. Compl. 12.  He does not allege that the Lubbock DA has discussed his charges with him at all, let alone threatened him with future prosecution or detention for the same allegations.  *See id.*  Finally, the Court observes that absent allegations the DA's alleged conduct has continued or will be repeated in the future, a declaration that his past conduct violated Molinar's constitutional rights "would be nothing more than a gratuitous comment without any force or effect."  *Johnson v. Onion*, 761 F.2d 224, 225 (5th Cir. 1985).

For these reasons, Molinar has failed to meet his burden of proving the need for or entitlement to declaratory or injunctive relief to prevent an ongoing constitutional violation

following his release from custody.  Thus, the undersigned recommends dismissal of Molinar's claims for declaratory and injunctive relief.

**D. Molinar names defendants immune from or not amenable to suit.**

Molinar seeks relief for alleged constitutional violations committed by parties either immune from or not amenable to suit under § 1983, i.e., the United States, the Lubbock DA, the grand jury, attorney Mark Snodgrass, and Molinar's mother and daughter.  Second Am. Compl. 1, 3; Questionnaire 4–8.

*1. Lubbock District Attorney*

Molinar contends that the Lubbock DA violated his constitutional rights through inadequate investigation of his daughter's claims, presentation of false allegations to a grand jury, false imprisonment, malicious prosecution, abuse of process, delay in filing a speedy trial motion, and intentional infliction of emotional distress.  Questionnaire 4–8.  As previously discussed (*see supra* note 4), for each of these claims Molinar does not name a specific person within the Lubbock DA's office, instead referring generally to the "District Attorney," the "DA," or the "Lubbock prosecutor."  *See id.*; Second Am. Compl. 8–11.  The Court has therefore construed Molinar's claims as challenging the actions of the individual(s) within the Lubbock County District Attorney's Office who prosecuted his case, and refers to him or her collectively as the "Lubbock DA."

A district attorney enjoys absolute immunity from personal capacity monetary damage claims arising out of actions taken during the exercise of his duties.  *See Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) ("An officer in an individual-capacity action . . . may be able to assert *personal* immunity defenses, such as . . . absolute prosecutorial immunity in certain circumstances." (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 342–44 (2009)): *Loupe v.*

11

*O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) ("A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as advocate for the state in the courts, or when her conduct is intimately associated with the judicial phase of the criminal process." (internal quotation marks omitted)); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (per curiam) (acknowledging that "[c]riminal prosecutors enjoy absolute immunity from claims for damages asserted under § 1983 for actions taken in the presentation of the state's case").  A prosecutor is entitled to this immunity even where a plaintiff accuses him of pursuing a prosecution based on "the lies of the alleged victim" or otherwise claims the prosecutor acted "maliciously, wantonly, or negligently."  *Stevens v. Barham*, No. 19-0821, 2019 WL 4793075, at *4 (W.D. La. Sept. 17, 2019), *R. & R. adopted by* 2019 WL 4793042 (W.D. La. Sept. 30, 2019); *see Loupe*, 824 F.3d at 539 (internal quotation marks omitted).

Here, the Lubbock DA is immune from each of Molinar's damages claims because evaluation of evidence, decisions regarding witness testimony, and the decision to bring or drop charges, all fall within the Lubbock DA's prosecutorial duties and therefore entitle him to absolute immunity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (holding that a prosecutor's evaluation and preparation of evidence for trial or a grand jury proceeding entitles him to absolute immunity); *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 276–77 (5th Cir. 2001) (providing immunity for prosecutor's decision regarding which witness to call and what testimony to elicit); *Stevens*, 2019 WL 4793075, at *3 ("[T]he decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity.")*.*  Moreover, Molinar concedes the Lubbock DA's immunity in his questionnaire responses.  Questionnaire 8.

In addition, Texas district and assistant district attorneys, when acting in their prosecutorial capacities, are considered agents of the state and possess Eleventh Amendment immunity against official capacity claims. *Quinn*, 326 F. App'x at 292–93 (recognizing that "this circuit has stated on numerous occasions that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities," thus entitling them to Eleventh Amendment immunity protection); *Esteves v. Brock*, 106 F.3d 674, 676, 678 ("If the complaint is construed to include a claim against [the ADA] in her official capacity, the claim is merely 'another way of pleading an action against an entity of which an officer is an agent.'"). To the extent Molinar sues the Lubbock DA in his official capacity, the DA is "protected by Eleventh Amendment immunity with respect to [his] actions in handling the criminal case against [Molinar]." *Quinn*, 326 F. App'x at 292.

Accordingly, Molinar's claims against the Lubbock DA for compensatory damages, in either an individual or official capacity, should be dismissed. *See Epps v. City of Dall. Police Dep't*, No. 3:15-CV-3881-L, 2016 WL 1642946, at *1 (N.D. Tex. Apr. 26, 2016) (dismissing at screening claims against district attorney because he possessed absolute immunity under § 1983); *see also Esteves*, 106 F.3d at 677–78 (dismissing both official and individual capacity §1983 monetary damages claims against assistant district attorney arising out of criminal prosecution).[8]

### 2. *Defense Attorney Mark Snodgrass*

Molinar names as a defendant his defense attorney, Mark Snodgrass, in relation to his claims for presentation of false allegations to a grand jury, false imprisonment, intentional

---

[8] Even if Molinar could sue the Lubbock DA for his speedy trial claim, he lacks standing to seek money damages herein. "The only remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal of any criminal charges." *Quinn*, 326 F. App'x at 290. "Once charges are dismissed, the speedy trial guarantee is no longer applicable." *United States v. MacDonald*, 456 U.S. 1, 8 (1982). Molinar reports that the Lubbock DA dropped all charges against him in July 2019, so "this [C]ourt lacks the ability to grant any relief for the alleged Sixth Amendment violation," and Molinar "lacks standing to assert his Sixth Amendment claim." *Quinn*, 326 F. App'x at 290.

infliction of emotional distress, and delay in filing a speedy trial motion. Questionnaire 4–8. Molinar does not allege Snodgrass's personal involvement in Molinar's grand jury proceedings or resulting detention (*see id.*), but does allege that Snodgrass failed to timely file a speedy-trial motion. *Id.* at 7; Second Am. Compl. 10.

To successfully state a claim under § 1983 against his criminal defense lawyer, Molinar must show that Snodgrass's actions are "fairly attributable to the State." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *accord Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Criminal defense attorneys, however, whether privately retained or publicly appointed, are not state actors. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Small v. Dallas Cnty.*, 170 F. App'x 943, 944 (5th Cir. 2006) (per curiam) ("[Plaintiff's] claim against [defendant] is not cognizable under § 1983 because a defense attorney in a criminal proceeding is not a state actor."); *Segue v. Carollo*, No. 14–2842, 2015 WL 2089759, at *4 (E.D. La. Apr. 30, 2015) ("The law is clear that under no circumstances can . . . a private attorney who represented or was retained to represent [plaintiff] in his criminal case . . . be considered a state actor for Section 1983 purposes as a matter of law."). Because Molinar's defense attorney is not a state actor, the undersigned recommends that the district judge dismiss Molinar's claims against Mark Snodgrass.

### 3. *Molinar's Mother and Daughter*

Molinar names his mother and daughter as Defendants regarding his claims for presentation of false allegations to a grand jury and intentional infliction of emotional distress. Questionnaire 4, 6. Though he does not specifically identify which facts he believes give rise to

these two claims, Molinar contends in his Second Amended Complaint that his daughter reported to CPS that Molinar sexually assaulted her in March 2016, while she was in the custody of Molinar's mother, and it was those allegedly false allegations that led to his grand jury indictment. Second Am. Compl. 6, 8–9, 11; *see* Questionnaire 4, 6.  Thus, Molinar names his mother and daughter for their actions as private individuals.  *See* Questionnaire 4, 6.

To bring a § 1983 claim against private individuals, a plaintiff must establish the individuals engaged in a conspiracy with state actors to violate the plaintiff's constitutional rights. *See Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008).  More specifically, the plaintiff must allege specific facts demonstrating an agreement between private and public defendants to commit an illegal act.  *See id.*; *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004).  Molinar does not allege a conspiracy—even conclusorily—between his family members and the Lubbock DA, who is the only public official he names as Defendant.  *See* Questionnaire 4, 6.  Instead, Molinar describes the criminal system working as it should—that is, he states that his daughter reported an incident of alleged sexual assault, CPS investigated the allegation, and the Lubbock DA brought charges against Molinar as a result of the investigation.  Second Am. Compl. 6, 8–9, 11.  Though Molinar believes his daughter's accusation was false and his mother knew of its falsity, he does not attribute such knowledge to the Lubbock DA.  *See id.*  Even assuming Molinar makes such an assertion, he proffers no facts showing the DA's actual knowledge of the false claim or agreement with the complaining party to pursue false charges.  Molinar therefore cannot demonstrate that his mother and daughter conspired with state actors to perform an illegal act.  *See Tebo*, 550 F.3d at 496.

Furthermore, grand jury witness testimony may not "provide the basis for, or . . . be used as evidence supporting, a § 1983 claim," and grand jury witnesses receive absolute immunity for

their participation in such proceedings. *Rehberg v. Paulk*, 566 U.S. 356, 374–75 (holding "that a grand jury witness is entitled to the same immunity as a trial witness," i.e., absolute immunity). To the extent Molinar pleads that his daughter's testimony was used, either directly or indirectly, in grand jury proceedings, Molinar's daughter receives absolute immunity for her testimony. For these reasons, Molinar's claims against his mother and daughter should be dismissed.

### 4. Grand Jury

Molinar names the "Grand Jury" as Defendant to his claim for "abuse of process." Questionnaire 7. Without providing specific facts, Molinar states conclusorily that the Lubbock DA and the grand jury "made an illegal, improper, or perverted use of the process," which he believes was "neither warranted nor authorized by process." *Id.* (cleaned up). Grand jurors enjoy absolute immunity for actions performed within the scope of their duties. *Imbler v. Pachtman*, 424 U.S. 409, 422–23 & n.20 (1976). As it appears Molinar is only naming the grand jury for its participation in evaluating allegedly false evidence presented by the Lubbock DA and Molinar's daughter, those grand jurors who participated in indicting Molinar receive absolute immunity from his "abuse of process" claim. *See id.* (recognizing grand jurors' absolute immunity because, like a judge, they must "exercise a discretionary judgment on the basis of evidence presented to them"); *see also Costello v. United States*, 350 U.S. 359, 364 (holding that criminal defendants may not "challenge indictments on the ground that they are not supported by adequate or competent evidence").

### 5. United States

Molinar names the United States as a defendant to each of his claims, apparently as supervisor to the "government employees" named in his pleadings. Second Am. Compl. 1, 3, 10–

11 ("I feel like the District Attorney lacked on there [sic] investigation . . . and as a government employee the United States is liable for there [sic] mistakes."); Questionnaire 4–8.

The United States, its agencies, and its employees acting in their official capacities have sovereign immunity from suit except when waived. *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2016). As the party asserting federal jurisdiction, Molinar has the burden of identifying a specific waiver of sovereign immunity. *Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002). To meet this burden, Molinar must establish that his "suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued." *Id.* (internal quotation marks omitted). As discussed above, Molinar exclusively cites the FTCA for his claim that "the United States has consented to suits" such as the one he now brings, but the FTCA does not apply. Second Am. Compl. 11; Questionnaire 8. Thus, Molinar's claims against the United States must be dismissed due to sovereign immunity.

### III.    Recommendation

For these reasons, in accordance with 28 U.S.C. §§ 1915 and 1915A, the undersigned recommends that the United States District Judge **DISMISS with prejudice** Molinar's Second Amended Complaint and all claims alleged therein.

### IV.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings,

Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

       Dated: December 30, 2021.

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**